### IN THE

# SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1870, IN THE FIFTY-FOURTH
YEAR OF THE STATE.

---

### GREGORY v. PURDUE.

SHERIFF'S SALE.—*Parcels.—Order of Sale.*—On a sale of real estate, consisting of several parcels, by a sheriff, upon an order of sale issued on a decree of foreclosure of a mortgage executed by a man and his wife, one who has purchased at a sale by the administrator of the estate of such husband, deceased, such real estate, except the interest of the widow as against creditors, and has had his portion set off to him by partition, has the privilege of directing the order of sale of the portion owned by him; and if he does so in a prudent manner, not prejudicial to the execution-plaintiff in the recovery of his debt, it is the duty of the sheriff to sell accordingly; and if, at the instance of the execution-plaintiff, the sheriff refuses to do so, and such owner is thereby prejudiced, the sale is void.

SAME.—*Sale in Parcels.*—On a sale of real estate by a sheriff, on execution, if the estate consists of several lots, tracts, or parcels, it is the imperative duty of the sheriff to offer each separately; and if a proper or reasonable bid be made (as two-thirds of the appraised value, where the sale is subject to the appraisement laws), it is his duty to sell the parcel, although the amount bid for it be not sufficient to satisfy the execution; and the fact that the sale of all the tracts may be necessary to satisfy the execution, cannot justify the sheriff in selling *in solido.*

APPEAL from the Warren Circuit Court.

This was an action by John Purdue against Benjamin F. Gregory, who is the appellant here, to recover the possession of real estate, which is described in the complaint.

Answer in denial. Verdict for the plaintiff. Motion for new trial overruled, and judgment.

The facts disclosed by the evidence are, substantially, as follows:

Charles High and his wife, Elizabeth, on the 31st of December, 1858, conveyed by deed, absolute on its face, a body of land in Warren county, known as the "Walnut Grove Farm," containing sixteen hundred and fifteen acres, to Purdue, the appellee, for the expressed consideration of eighteen thousand dollars.

In 1864, High instituted a suit in the Warren Circuit Court against Purdue, claiming that the conveyance of the farm was intended as a mortgage, to secure a loan of money, and praying for a redemption thereof, upon the payment of what should be found due to Purdue after deducting the rents and profits received by him.

Charles High died, pending the suit, and it was subsequently revived and prosecuted in the names of Elizabeth, the widow, and the children of said marriage. The venue was changed to the Boone Circuit Court, and, upon a trial there had, it was adjudged that the conveyance to Purdue was executed as a mortgage, and that there would be due to Purdue thereon the sum of thirty thousand dollars on the 1st day of March, 1868, and it was decreed that, upon the non-payment of said sum on or before the 1st day of March, 1868, the whole of said lands, or so much thereof as should be necessary to satisfy the decree, should be sold by the sheriff of Warren county, upon an order of sale issued on the decree.

On the 29th of January, 1867, Mrs. High, the widow, quitclaimed her interest in the whole of the lands to Purdue for ten thousand dollars. The lands of which Charles High died seized exceeding in value twenty thousand dollars, the widow was only entitled to one-fifth thereof, as against creditors.

On the 16th of March, 1867, Miller, the administrator of Charles High, pursuant to an order of the Court of Com-

mon Pleas of Warren county, sold and subsequently con-- veyed to the appellant, Gregory, the undivided four-fifths. of said land, for the sum of $24,239.15, subject to the decree of thirty thousand dollars in favor of Purdue in the Boone Circuit Court.

Subsequently, on proceedings instituted by the appellant —claiming under the administrator's deed—in the Warren Circuit Court, against Purdue, partition of said lands was made between them, and the interest of each set off to him in severalty, and confirmed by the court.

On the 10th of April, 1868, an order of sale was issued on the decree in favor of Purdue in the Boone Circuit Court for thirty thousand dollars, to the sheriff of Warren county, who, by virtue thereof, and after having the lands appraised, and having given proper notice of the time and place of sale, on the 9th of May, 1868, exposed said lands for sale at the court house door in Williamsport, in said county, and then and there sold and conveyed the whole of said lands in a body to said Purdue, for the sum of thirty-one thousand dollars, being more than two-thirds of the appraised value thereof.

Before the sale, the appellant made a written demand of the sheriff that he should cause the lands to be appraised in fifty-three parcels, according to a schedule thereof attached to the demand, and also presented a plat of the land, divided into parcels according to the schedule, with the lots or parcels thereon numbered consecutively from one to fifty-three, inclusive. The lots or parcels covering that part of the land assigned to the appellant, in the partition suit, are numbered on the plat from one to forty-four, inclusive; and those embraced by the land assigned on partition to Purdue are numbered from forty-five to fifty-three, inclusive. The appraisement was made in parcels as demanded.

The tracts assigned to Purdue lie in a body, and consist of the west half of the south-east quarter, the east half of south-west quarter, and sixty acres off the south end of the west half of the south-west quarter, all in section thirty-six,

township twenty-three, range nine. They constitute a body of three eighty acre tracts adjoining each other, except twenty acres off the north end of the eighty acre tract on the west. It extends from the east side of the whole body to about the center of it, and is the middle third of it north and south.

The record contains a lengthy agreement of the parties as to the manner in which the lands were offered for sale and the facts connected therewith; from which the following facts are drawn.

After the sheriff had offered the rents and profits for seven years and received no bid, the appellant claimed the right to have the lands sold in parcels, and thereupon demanded of the sheriff that he should first sell lot numbered thirty-five on the plat and schedule, containing ten acres, and bid therefor thirty dollars per acre, being double its appraised value; but the sheriff refused to receive the bid or first offer said lot for sale, and thereupon, of his own accord, offered the fee simple of lot number one on the plat, containing forty acres, for the thirty thousand dollars and costs, and receiving no bid, he then added lot number two, and offered them together in the same way, and so continued to add lot after lot, until he offered lots from one to seven, inclusive, making in all two hundred and eighty acres, lying in a body and situate in the north-west corner of the farm, when John L. Miller bid two-thirds of the appraised value of said lots; but the sheriff refused to receive or cry the bid, giving as a reason therefor that it did not amount to the whole judgment and costs; and thereupon Levin T. Miller bid on said lots from one to seven, for William Cissna, the full appraised value thereof; which bid the sheriff also refused to receive, for the same reason stated before. Lots eight and nine were respectively added to the quantity offered, and as each addition was made, John L. Miller bid the appraised value of the lot added, but the sheriff refused to receive the bids.

Lots ten and eleven were added in the same manner, and

the appellant bid on number ten the appraised value, and on eleven two-thirds of the appraisement; which bids were refused. The sheriff in the same manner continued to add lots, in their consecutive numbers, until he offered lots one to twenty-seven, inclusive; and as each addition was made, John L. Miller bid on the lot added, its full appraised value; but said several bids were refused. The sheriff then put up all the lots together on which John L. Miller had made bids, and offered that if he or any other person would bid for·them the aggregate amount of Miller's separate bids, being $24,386.68, he would sell them for that amount, if no one bid more. No bid was made; and the sheriff continued to add an additional lot at each offer, until he offered from lot number one, to fifty-two, inclusive; and as each offer was made the appellant bid on the lot added, two-thirds of its appraised value, and in some instances the full amount of the appraisement; all of which the sheriff refused to receive or cry. He then added lot number fifty-three, and offered the entire lands in one body, including as well those held by the appellant as those set apart to Purdue on partition, under his purchase from the widow, when Purdue bid there-for the sum of thirty-one thousand dollars, being more than two-thirds of the appraised value; and no one bidding more, they were struck off to him for that sum.

The evidence is conflicting as to whether the lands would likely sell for more in parcels, as appraised, or in larger lots, than as a whole in one body. The whole had been used for years prior to the sale as a stock farm.

Purdue had executed to the sheriff an indemnifying bond, and, in making the sale and determining the mode in which the lands were offered, the sheriff was governed exclusively by the directions of Purdue's attorney.

The court instructed the jury in reference to the sheriff's sale, as follows:

"1st. If the evidence shows that the plaintiff recovered a judgment in the Boone Circuit Court for thirty thousand dollars, upon a foreclosure of a mortgage, made by Charles

High and wife, in 1858, who were then the owners of the land; that the same was unpaid; and an order of sale was properly issued thereon, which came to the hands of the sheriff of Warren county, who caused the lands in controversy to be appraised in parcels, as requested by the defendant, Gregory, and after duly advertising them as required by law, first offered the rents and profits for terms of from one to seven years, and no one bidding therefor, he then offered the lands in parcels as they had been appraised, and no one offering to pay the judgment and costs for any one parcel, or for any less number of parcels put up, adding one at a time until the whole lands were put up, then, the putting up of all the lands at one time was legal, and in accordance with the statute upon the subject of sheriff's sales; and the title conferred by a sheriff's deed made in pursuance of such sale, for more than two-thirds of the appraised value of the lands, is good.

"2d. If the lands in controversy constituted one farm, and had been used together, and were more valuable as an entirety, and the sheriff in making the sale put up all the lands in small parcels, first offering one, and then adding tract by tract until all were offered, and no one was willing to bid the full amount of the judgment and costs for less than the whole of the lands, and such amount was bid upon said lands by the plaintiff, and was more than two-thirds of the appraised value of all the lands, and if you find that in all other respects the sale was fair and reasonable, then, the fact, that the sheriff refused to sell small separate tracts of the land from the farm for less than the whole amount due, will not vitiate the sale.

"3d. The sheriff was required by law to use a sound discretion in the sale of the lands, and if the same had been divided into fifty-three tracts, of from ten to forty acres in size, at the request of the defendant, and the sale of any one of these tracts separately, would have impaired and injured the sale of the residue, then the sheriff was not bound

to accept bids on small separate tracts unless those bids were sufficient to pay off the judgment."

The court, of its own accord, also instructed the jury as follows:

"The statute requires that no more land shall be sold by the sheriff than is necessary to satisfy the execution, unless the same is not susceptible of division; and a duty is thus imposed on the sheriff which he may not omit. I do not understand by this requirement that the land, if susceptible of division, and consisting of separate parcels, shall be sold each separately, unless each separate piece or tract will sell for an amount sufficient to satisfy the execution on which the same may be offered, but the sheriff shall test the fact as to whether a less quantity than the whole will sell for enough to satify the execution, by offering in parcels until he receives a bid equal to the amount of the debt to be made; and then it would be his duty to strike off the same. In other words, the sheriff must sell just so much and no more of the real estate as will be sufficient to pay the judgment debt."

The court refused to give the following instructions asked by the appellant:

"2d. If, in this case, the property sold consisted of distinct lots, tracts, or parcels, capable of being used as separate tenements, it was the duty of the sheriff to thus offer and sell them, if the plaintiff would not be thereby prejudiced in the collection of his debt; and if he failed to do so, at the instance or by the procurement of the plaintiff, and the defendant was thereby prejudiced, the sale was void.

"3d. If the defendant was the owner in fee of the lands in dispute, at the time of the alleged sheriff's sale, as assignee of the execution-defendant, it was his privilege to direct the order of sale; and if he did so direct the order of sale in a prudent manner, not prejudicial to the execution-plaintiff in the recovery of his debt, it was the duty of the sheriff to sell accordingly; and if he failed to do so

at the instance of the plaintiff, and the defendant was thereby prejudiced, the sale is void.

" 4th. The question which you will consider is, not merely whether the sale of a single tract would have impaired the value of the residue as a whole, but the paramount question is, in which mode of sale would he have realized the largest amount of money?"

The appellant excepted to the charges given by the court, and to the refusal of the court to give those asked by him.

ELLIOTT, J.—The questions urged in this court, upon which a reversal of the judgment is claimed, arise upon the action of the circuit court in overruling the motion for a new trial. The reasons filed for a new trial were,

1st. That the verdict of the jury was not sustained by sufficient evidence.

2d. That the court erred in its instructions to the jury, to which the appellant excepted, and also in refusing to give the instructions asked by the appellant.

The evidence was sufficient to justify the verdict, under the instructions of the court. The decision of the case must, therefore, depend upon the question whether the jury were properly instructed as to the law of the case.

Gregory had become the owner of four undivided fifths of the land, and Purdue of the remaining fifth under his purchase from the widow; but, as the latter had united in the mortgage upon which the decree was rendered, the whole of the lands were alike subject to the decree; and the fact that partition had been made between Gregory and Purdue, did not change or affect the liability of the whole for the payment of the decree.

The lands were appraised in parcels, at the request of Gregory, according to a plat and schedule furnished by him.

When the sheriff was about to commence the sale of the fee simple, Gregory claimed to direct the order of sale, and demanded of the sheriff that he should first expose to sale lot number thirty-five on the plat, being a part of the land

owned by Gregory, who bid therefor double its appraised value; but the sheriff refused to receive the bid or offer the lands for sale, as directed, and first offered lot number one, being also a part of the lands held by Gregory, but refused to receive a bid therefor, unless it was equal to the whole amount of the decree.

The appellant, in the third instruction, which was refused, requested the court to instruct the jury, that, as the owner of the land purchased of the administrator of High, the mortgagor, it was his privilege to direct the order of sale, and if he did so in a prudent manner, not prejudicial to the execution-plaintiff in the recovery of his debt, it was the duty of the sheriff to sell accordingly, and if he failed to do so at the instance of the plaintiff, and the appellant was thereby prejudiced, the sale was void.

We think the instruction should have been given. In the sale of that part of the land owned by the appellant, the execution-plaintiff had no other interest than that it should sell for the best price, or for enough to pay his debt, and in that respect there was no conflict in interest between the execution-plaintiff and the appellant. But the latter had a further interest. The appraisement of the land in lots exceeded the amount of the debt, and if they could be made to sell for their appraised value, the sale of the whole would not be necessary; and if, as the appellant contends, the interest of the widow, held by Purdue, is liable for one-fifth of the debt, the interest of the appellant would be further increased.

The statute provides, that it shall be the duty of the sheriff to levy an execution first upon that part of the property designated by the execution-defendant. Here the appellant, as the owner of the land, occupied the relation of the judgment-defendant; and although the decree in this case designated the property to be levied on, it was clearly the right of the appellant to direct the order of sale of the land held by him, provided he did so in such a manner as not to prejudice the execution-plaintiff in the collection of his debt.

The second instruction asked by Gregory asserts the proposition, that if the lands consisted of distinct lots, tracts, or parcels, capable of being used as separate tenements, it was the duty of the sheriff to thus offer and sell them. This was refused; and the court instructed the jury thus: " The statute requires that no more land shall be sold than is necessary to satisfy the execution, unless the same is not susceptible of division; and a duty is thus imposed on the sheriff which he may not omit. I do not understand by this requirement that the land, if susceptible of division, and consisting of separate parcels, shall be sold each separately, unless each separate piece, or tract, will sell for an amount sufficient to satisfy the execution on which the same may be offered; but the sheriff shall test the fact as to whether a less quantity than the whole will sell for enough to satisfy the execution, by offering in parcels until he receives a bid equal to the amount of the debt to be made, and then it would be his duty to strike off the same; in other words, the sheriff must sell just so much and no more of the real estate as will be sufficient to pay the judgment debt." The first instruction given by the court was to the same effect.

The duty of the sheriff in selling real estate on execution is regulated by statute. Section 466 of the code (2 G. & H. 249) is as follows: " Real estate taken by virtue of any execution shall be sold at public aution at the door of the court house of the county in which the same is situated; and if the estate shall consist of several lots, tracts, and parcels, each shall be offered separately; and no more of any real estate shall be offered for sale than shall be necessary to satisfy the execution, unless the same is not susceptible of division."

The last two clauses of this section relate to two distinct classes of cases.

First. If the estate consists of several lots, tracts, and parcels, each is required to be offered separately.

Second. Where the estate consists of a single lot, tract,

or parcel, but its value greatly exceeds the amount of the debt, no more of it shall be offered for sale than shall be necessary to satisfy the execution, if it is susceptible of division.

The question raised by the instructions now under consideration relates more especially to the first class. If the estate consists of several lots, tracts, or parcels, the duty of the sheriff is imperative; he *must* offer each separately; and if a proper or reasonable bid is made, which in this case would be two-thirds of its appraised value, it is his duty to sell, although the amount bid is not sufficient to satisfy the execution; and the fact that the sale of all the tracts may be necessary to satisfy the execution, cannot affect the case or justify the sheriff in selling *in solido*. The only difficulty that can arise under that clause is in determining whether the estate does consist of *several* lots, tracts, or parcels, within the meaning of the statute, under the facts in a given case. If the tracts are not contiguous, they are clearly *several* under the statute, and must be sold separately; and so, if they are owned by different parties, though contiguous, and all liable to the execution, yet they are *several*, and cannot be sold together.

The lands of this State were divided into tracts by the government surveys, and were sold by the government in such subdivisions. These subdivisions, in many instances, may still denote the several tracts, and in such cases may properly be regarded by the sheriff in making sales on execution. But it frequently happens that two or more of such tracts, lying contiguous to each other and owned by the same person may be so united by improvement and use as to render their union necessary in constituting a single farm or homestead; and in such cases they should be regarded as constituting but a single tract or parcel. The mere fact, however, that the title of a large number of contiguous tracts is in the same person, would not, of itself, constitute them one tract under the law. Whether a given body of land is to be considered as constituting a single tract or par-

cel, or as several, is, in a great measure, a question of fact; and it is difficult, if not impossible, to prescribe any general rule by which such cases should be governed.

In this case, the lands held by Gregory constituted one large body, which, with those assigned to Purdue on partition, had, for years before the partition was made, been used as a stock farm; but that fact alone did not make them a single tract or parcel under the statute; and whether there were other facts in the case, sufficient to justify the conclusion that they should be regarded as constituting but one tract or parcel, was a proper question for the jury, under proper instructions from the court; but that question was rendered immaterial, and was virtually withdrawn from the jury, by the instruction of the court, that, although the lands consisted of several tracts or parcels, it was not the duty of the sheriff to sell them separately, unless the amount bid was sufficient to pay the whole amount due on the decree.

But it is claimed that the sheriff did offer the lands for sale in parcels, as required by the statute, and the case of *Reed* v. *Diven*, 7 Ind. 189, is referred to as sustaining the sale. We do not so understand that case. There, a body of lands, containing six hundred and fifteen acres, was levied on and sold under an execution issued on a judgment for one hundred and seventy-seven dollars, to be collected without appraisement; but, except one tract of eighty acres and another of forty acres, the lands were incumbered by a prior mortgage of five thousand four hundred dollars, and the eighty acre tract not covered by that mortgage was subject to another mortgage of three hundred dollars, and the whole was also incumbered by two prior judgments, subject to the appraisement laws, amounting to six hundred and twenty-five dollars, making in all an aggregate of six thousand two hundred and twenty-five dollars. The lands were admitted to be worth seven thousand dollars. A complaint was filed to set aside the sale. An answer was filed, in which it was alleged that the lands consti-

Gregory *v.* Purdue.

tuted but one farm, and were not in separate tracts; and there was no averment, either in the complaint or answer, that the lands were susceptible of division. A demurrer was sustained to the answer in the lower court, and the sale was set aside. On appeal to this court, DAVISON, J., in delivering the opinion of the court, affirming the judgment of the court below, after citing the statute, says, "this provision imposes a duty on the sheriff which he may not omit. The property levied on being divisible, he is restricted from offering more of it than may be necessary to discharge the debt in his hands for collection. It may, it is true, require the entire tract to satisfy the execution, and when this occurs, the whole may be offered at once. In the present case there is no direct averment, either in the complaint or answer, that the lands are susceptible of division; still, it is very clear, from the manner in which they are described, that a sale of them in distinct parcels was quite practicable. Indeed, the answer admits that 'the premises, and parts thereof,' had, on other executions, been offered for sale. They are plainly marked in separate parcels, and conceded to be worth over seven thousand dollars. Hence it would seem that the sheriff was not authorized to expose to sale the whole in one body, until he had offered them in separate quantities. Having done this, and thereby ascertained that the executions could not be satisfied by that mode of sale, he might then have offered the entire tract."

It is evident that the question discussed in that case related to the duty of the sheriff under the last clause of the section of the statute referred to.

Indeed, it was necessarily so under the state of the pleadings in the case. The answer alleged that the lands constituted one farm and were not in separate tracts. This allegation was admitted by the demurrer, and hence the only ground upon which the decision of the lower court could be sustained was, that they were susceptible of division, and, as their value, subject to the prior liens, exceeded the amount.

of the execution, the sheriff should, therefore, have first offered them in parcels, and thereby ascertained that he was not selling more than was necessary to satisfy the execution. No appraisement was required in that case, and the whole of the lands were sold in a body to the execution plaintiff, subject to the prior incumbrances, for fifty-one dollars, which was less than one-third of the amount due on the execution; and yet the sale was set aside because the lands were not first offered in separate parcels.

Whilst that case is not directly in point, it contains nothing in conflict with the opinion herein expressed, but, on the contrary, tends strongly to support it.

If these lands consisted of several tracts or parcels, as claimed by the instructions asked by the appellant and refused by the court, and were, therefore, required to be sold separately, it would be a total perversion of the statute, to say that the sheriff was not bound to so sell them unless the tract offered separately would bring the whole amount of the execution. The lands were described in parcels in the order of sale. The sheriff recognized the fact that they were at least susceptible of being divided into parcels, by having them appraised in separate lots, at the instance of the appellant. The appraisement in that form was useless, unless it was intended to sell them in parcels; but it was a mere mockery to offer one of such parcels for sale, the appraised value of which did not exceed twelve hundred dollars, but refuse to sell it unless the purchaser would pay for it over thirty thousand dollars.

The law prohibted a sale for less than two-thirds of the appraised value. The lands owned by Gregory, at that rate, would not pay the entire amount of the execution; and yet the sheriff gave notice that he would not sell any quantity less than the whole, including also those held by Purdue, for less than the whole amount due on the execution, and accordingly added lot after lot until the whole was offered in one body and in that form sold to the appellee. This was clearly illegal. By the partition, the lands were severed,

and thereafter constituted two several and separate parcels; and whether those assigned to Gregory did or did not consist of more than one tract or parcel, under the statute, they at least were separate from those assigned to the appellee, and should have been sold accordingly.

The law affords no warrant for selling both parcels *in solido*.

The court erred in the instructions given, and also in refusing to give the instructions asked by the appellant.

In *Catlett* v. *Gilbert*, 23 Ind. 614, many of the cases decided by this court, involving the legality of sheriff's sales, are cited and reviewed.

The court refused to instruct the jury that the lands held by Purdue, as the vendee of the widow, were liable to contribute, ratably, to the payment of the decree under which the sale was made. We do not see how that question is involved in this case. As already stated, the lands were all alike bound for the payment of the decree, and all were sold under it. If the sale had been a valid one, no question of contribution could possibly arise, and, under the facts in the case, the invalidity of the sale did not depend upon the question of contribution. It follows, that the instruction was irrelevant, and for that reason was properly refused. The merits of the question presented by the instruction are not properly before us, and we do not, therefore, decide it.

The judgment is reversed, with costs, and the cause remanded for a new trial.

GREGORY, J., being related to one of the parties, was absent.

*Z. Baird, G. O. Behm, A. O. Behm, B. F. Gregory*, and *J. Harper*, for appellant.

*H. W. Chase* and *J. A. Wilstach*, for appellee.